AT&T, the AT&T logo and all other AT&T marks contained herein are trademarks of AT&T Intellectual Property and ordered from AT&T, Inc. The Honorable Judges of the United States Court of Appeals in and for the 7th Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Our first case for this morning is Ali Gadelhak v. AT&T Services. We'll hear from Mr. Sostrin. Good morning. May it please the Court, Tim Sostrin for the appellant, Ali Gadelhak. The issue before the Court today is whether the automated technology that AT&T used to send spam text messages to Mr. Gadelhak's cell phone qualifies as an automatic telephone dialing system or ATDS under the Telephone Consumer Protection Act. When Congress was debating the TCPA in 1991, it heard testimony that 30 to 40 percent of telemarketers were using list-based dialing systems to conduct their telephone campaign. Can I ask you, it seems to me, well, my first comment about this case is that you have to have a strong sense of irony to think that the plain meaning rule is going to apply since everybody's arguing that their meaning is the plain meaning and we have three or four contenders for what's plain. But putting that to one side, is the basis of this debate about the fact that today, given big data, a prearranged list could have literally millions of people on it? No, that's not our argument, Your Honor. Our argument is that the way that the statute is drafted, it explicitly covers systems that dial stored telephone numbers. And the reason that it does is because Congress wanted to ensure that the systems that it heard testimony about were covered. And so it defined the ATDS provision to cover systems that automatically dial stored telephone numbers. And there's no dispute that AT&T's system does exactly that. It sends millions of text messages per month through a fully automated process to both customers and non-customers like Mr. Gotthard. So that's where we get into, though, I mean, my first point about plain meaning. You have this phrase, we're all trying to understand what the phrase equipment, which has the capacity, capital A, to store or produce telephone numbers to be called, comma, using a random or sequential number generator, and B, to dial such numbers. So we're trying to figure out, does that mean that numbers that were not gathered together in a random or sequential way are the kind of thing we're dealing with? Absolutely. And I think, really, the question before the court is, what does the clause using a random or sequential number generator modify? Suppose it modifies, I think this is in one of the briefs, but suppose it just modifies the word called or to be called, if you want. What happens to you then? I think that that would be a very problematic way to interpret it for two reasons. First, what that does is if Congress was concerned, was trying to modify the calling function, then it would have placed that clause at the end of the last phrase of the definition, which is and to dial such numbers. As soon as you apply the modifier to the verb called, then that last phrase, and to dial such numbers, becomes completely redundant and pointless, because the statute has already, at that point, addressed how the calling function is required to function. So I don't think that's a way that the statute can be interpreted. Why can't it modify both store and produce? A number of reasons. Because store can also mean accumulate. So there's a number of reasons why it cannot, and I'll go through them all. I think the primary reason is that it renders the word store superfluous. I don't think so, because I think that if you have provide and dial, I think could imply a temporal component, like provide or generate this random string of numbers and then dial. Without storage, I see a semantic difference there between store and then use for later. Store and dial, I don't think it's redundant. So the reason that it's redundant is that if the capacity to use a random or sequential number generator is always required, then what happens is number generation, by its very nature, produces telephone numbers. That's what it does. And so when you have the capacity to use a random or sequential number generator, the produce prong of the statute is satisfied, always. And as a result, there's nothing left for store to do. There's no way that it could come into play when there is a capacity to use a random or sequential number generator, because produce has already been satisfied. And this is the primary problem. This violates the cardinal principle of statutory interpretation. Would it be possible, though, if you have a machine that has the capacity to produce and dial the random string and then transfer in some way over to another machine that has the ability to store those randomly generated numbers and then dial them? The statute would still apply there, right? The question is, number one, there's two questions there. What is the system? And I think the case law for a long time, certainly with FCC orders, is that you can't just say, oh, this component is the system and this other part is not the system. So you look at the system as a whole. The other question is you still have to determine, well, what does store mean? And if the system has the capacity to store and then dial, you don't have to get into random or sequential number generation, because that only modifies produce. But you are a bit swimming upstream. That's why I asked about the size of the database, because I could imagine giving meaning to both store and produce, or as Judge Barrett put it, using a random sequential number generator applied to each part of that. If you thought there was some reason, you know, if let's say AT&T has 2 million people in this database and you don't really want to contact them, very often you'll do a subset of your entire database for efficiency reasons, especially for surveys and the like. So maybe you want a random selection of what you're going to store, and also random select or the equipment also alternatively could randomly produce the numbers to be called. Right. I'm sorry, Your Honor. I'm not following. Well, I mean, I'm trying to give, you know, everybody's giving us these grammar lectures. I feel like I'm in high school again. And the problem is the grammar lectures in the briefs are of a level far more sophisticated than the grammar that I believe Congress normally uses when it writes statutes, although ledge counsel tries hard to make these things work well. But there is a canon that says if there's a modifier, it should modify everything, or there should be some reason that you can see in the face of the language to suggest why it doesn't. I guess your reason is that the storage function is not the kind of thing that random or sequential makes any sense about. Right. So that's why it could only be produced. There's a couple reasons why you don't apply the series modifier. You don't generate storage anyway, do you? That's correct. So the first reason why you can't apply the series modifier rule here is that the rule doesn't apply even on its face. The rule applies when there's a straightforward way to apply the modifier to all of the preceding terms. And while it makes sense to produce numbers using a generator, it simply does not make sense to store numbers with a generator. These are distinct functions. So that's one reason why you can't apply the rule. I just want to say that I disagree with that because I agree in the way that when I looked up store in the dictionary and I saw that one of the meetings is accumulate or gather. I think it does easily satisfy that. To accumulate using a random number generator, and a number generator is a form of art that generates numbers in random strings. I think you can accumulate numbers that have been generated in random strings for later use. I think the idea is that you have to accumulate them into a list, and that's the storage function. You have to accumulate them randomly or sequentially. No. What I'm saying is that the accumulation function happens after the generation function. It's a separate computer function to store something versus to just generate it because it could be generated and then disappear. But this incongruity between store and generate is not the only issue. The series modifier rule does not say that a rule has to apply to all of the prior terms when the result is going to be that you're going to render one of those terms superfluous. This is the Supreme Court's decision in Lockhart. It was asked to apply the series modifier rule, and it said we're not going to do that because it would render this term superfluous. And you have the same problem here. The other issue, of course, is that the interpretation offered by AT&T doesn't just render the word store superfluous. It renders entire defenses to ATDS liability superfluous as well. These defenses can only ever hoped to be asserted if you're using a list to dial the numbers. That's, I mean, I think the district court has pointed out and Judge Feinerman has pointed out that you can have blocks. You can take numbers, say, from a do not call list, and even if you're randomly generating numbers, there would be ways to block out those numbers. I don't think you have to be working from a list. If you're blocking out numbers, then you're creating a list. Whether you're removing numbers or you're adding numbers, what you're doing is you're creating a preset universe of numbers that you will then call. That's a list. That you will not call. You could say, why wouldn't it work to say this thing generates a number and have a function in it say, oh, that number's actually on the do not call list. So block that one. Right. So what you're doing there is you're not just creating a list of numbers that you won't call. You're creating a list of numbers that you will call because the numbers that are left when you block out those numbers are then remaining to be called. And you're then left with a set, defined universe of numbers that you will call. And so that's why the idea that you can assert these defenses without using a list, I think, is problematic because that's the only way. If you have no idea who you're calling because you're just generating arbitrary phone numbers, then you can never be in a position to say, I have consent. But then how does produce work? Because under the meaning that just says produce by a random number generator, explain to me. Maybe I'm not following your theory, but it seems to me that everybody's assuming that that's something that's covered by the statute. Random, it's produced, and then dialed. But as I hear you making this argument, and maybe I'm just not following it, you're saying that that wouldn't work. There would be no way to assert a defense in that. No, there is a way to use a list. You can use a list. To use the do not call registry, say? You could do that, or you could have a list of customers that you want to call, or you could have a list of people that you think might be interested in the product you're selling. Yeah, so you're saying you'd always have to store, that you never could just produce and use. Well, I'm saying that if you want to be in a position to assert the defense, then you have to make some attempt at using a list. But that doesn't resolve the question is, is a list enough to get you out of the, to circumvent the statute? And it can't be, because the reason the word store is in there is to cover list-based systems. Okay, go ahead. So you're using this to say equipment which has, I'm breaking it apart, equipment which has the capacity, A, to store and, B, to dial such numbers, and equipment which has the capacity, A, to produce telephone numbers using the random system, and, B, to dial. That's your interpretation. Yes, but I think one thing that's important to point out here is that AT&T, they say in their brief, the direct object of store is telephone numbers to be called. We don't dispute that. So you don't have to add words into the statute to have it make sense. Those words are already implicitly there. They're the direct object of store. We gave some examples in our brief, but I'll give another one. If I tell you that baseball is a sport where the players throw or hit a ball using a bat, you know that using a bat does not modify throw. And there is nothing that is grammatically incorrect about that sentence. And the same thing is true with this sentence. It just doesn't make sense to use a generator to store numbers, one, and, two, it's going to render store superfluous. Well, but think about, like, the Ninth Circuit's opinion and the position that you're urging here is so broad. I mean, what if an iPhone, you know, the D.C. Circuit talked about some of the rules that it struck down in ACA. I mean, think about an iPhone. What if an iPhone, and I know there are these questions about capacity and whether you add an app or something like that, it counts. But what if an iPhone, which has stored my numbers, has the ability then to automatically dial the numbers that are in my iPhone, you know, to send out a text saying that my number has changed. That falls within the statute under your interpretation? So, no, because what the statute requires, and I think this is important, is that the statute requires automatic dialing of stored telephone numbers to be called. And so, yes, if you somehow reconfigured your iPhone or downloaded an app to say, here's a big list of numbers, I'm storing them to be called, and then now this system's going to automatically dial all of them. That is a different question than how do smartphones usually work. Nobody automatically dials a list of telephone numbers that are stored for the purpose of being called in succession. That's what the statute is intended to address. So I don't think that the smartphone issue is a problem at all. These smartphones are not used in automated fashions with dialing. Well, I thought that your argument was even if they had the capacity to do that, which I think you have to concede. They're actually awfully powerful little computers. The courts have ruled out, certainly the D.C. Circuit ruled out the fact that capacity alone was enough. You had to be able to do it right now. Absolutely. And so just to clarify a point there, we don't concede that smartphones have the capacity to be ATDSs because, as the D.C. Circuit said, capacity does not mean, well, if you download an app and then you change the software completely, that's enough. No. It has to have the current ability to engage in automated dialing. And smartphones do not do that. I see that I have only a few minutes remaining for rebuttal, so if it's okay with the Court, I'll stop here. All right. Thank you. Mr. Pincus. Thank you, Your Honor, and may it please the Court. I'd like to start with two key points about my friend's interpretation. I think the first is, again, backing away a little bit from the rules of grammar, it makes surplus a central portion of the statutory text. Everything does. I haven't seen a reading of this statute yet that doesn't somewhere create that problem, which leaves us in a bit of a pickle. Well, I think we agree with Judge Barrett, and I'm happy to get back to this, that actually store is not made surplus. But I think what's indisputable is, under the plaintiff's interpretation, using a random or sequential number generator is surplus because, as he said, and as they say in their briefs, as long as there's a list of numbers, it doesn't matter how it's generated. And since any number that's produced has to be stored before it's dialed, their definition of stored makes the way the number is generated totally irrelevant and surplus. Well, not under the produced part. I think their understanding essentially is if the comma weren't there, and you can have a list that's been produced using a random or sequential generator, or you can have a list that was not, that was produced, let's say, out of all of your customer records, so that's not random or sequential. I think there are two problems with that. One is the way technology works is something that's produced before it's dialed, it has to be stored, even for a small period of time. So just looking if the generator… Well, how do you store? Explain to me how you store. I understand that point, although it can be a nanosecond. How do you store using a random number? It seems like a mismatch grammatically. Well, I think it may not be the smoothest grammar, but I think intuitively when you store something, one question is how are you selecting the things that you're storing? Well, that's a different question. That sounds more like how did you produce, or what rule of storage were you using? Well, although, as Judge Barrett said, one meaning of store is accumulate. I don't think store is necessarily… Do we know Congress meant that meaning? There are quite a few other meanings of store, too. I think, again, stepping back… That's the risk of dictionaries, honestly. Well, that's why I think stepping back perhaps from the dictionary, the question is, Congress included the using phrase, using a random or sequential number generator, for a reason. It's a central part of the definition. Well, because if we get… Can we get actually back to what Congress was worried about here? Because, I mean, this is the dark ages, right? We're dealing with legislation from an era that doesn't look very much like today. But at the time, people were very concerned, especially for cellular service, with the fact that the United States had adopted a convention for landlines under which people are not charged for phone calls that are incoming. But people's cell plans back in the day, you know, in the early 90s, did charge you for incoming calls. So when these telemarketers were, you know, however they found your number, making an incoming call, they were actually costing you money. And that, very similar to the anti-fax legislation, Congress thought, well, that's inappropriate. You know, you can't do that. So these random generators posed a problem, made sense to say that's an automatic system. It's going to be subject to this law. But the storage function doesn't have anything to do with those problems. Well, although I think the legislative history really indicates that with respect to auto-dialers, the focus was on random generation. A lot of the both…we cite both reports in our brief. The focus really was on the fact that the random and sequential number generators, which were, I think everyone agrees, predominant at that time, were dialing numbers, emergency numbers, pagers, losing hospitals. But they were also costing people money. I don't disagree with you that those factors were also highlighted, but there was the overarching factor that every single person who received an incoming unwanted call got hit for their minutes. There was. But if that were true, why would Congress have limited produce to using a random or sequential number generator? Because they were listening to the telemarketers who begged them not to be put out of business. I think that's an easy answer. So we have these two verbs, store and produce. Or produce. That's the problem. Or produce. Right. I think the problem is produce has this limitation. If store is interpreted not to have that limitation, produce and the limiting phrase become totally surplus because everything gets stored. And so to the extent Congress included that phrase for a particular reason, that reason is gone. And it seems very incongruous. If Your Honor's view of Congress's intent was right, why would they have included that phrase at all? The statute could simply have said to store telephone numbers and dial such numbers. And that would have been enough. Now, Mr. Pincus, you could probably do a much better job drafting this statute for whatever ends it may have had than Congress apparently did. But here we are, stuck with it. Do you think they – I mean, there have been actually copyright cases about this. Like when your computer flashes something up in the screen, are you already infringing the copyright of someone because it has momentarily copied it? This whole technological thing about everything is stored assumes a word – assumes a meaning for store that is highly transient, right? Well, I think there's no reason to – there's certainly nothing in the statute that limits it. Well, there's nothing in the statute either if you want to talk about plain, ordinary, day-to-day meaning, which the Supreme Court emphasizes. When you've stored something, like you get a storage unit. You don't get a storage unit to just run your stuff in and race back out again with it. But this was stored – even though we were in the dark ages, this was stored in the context of technology. This wasn't stored in the context of renting a unit. And so I think it would be very unlikely that Congress considered that. And, again, I think moving back from the plain language, it just seems odd that Congress would have created this very limited produce universe and this very broad store universe that makes produce largely – we would say totally, but even if there's some little snippet – almost totally surplusage. Why if you – oh, go ahead. I was just going to say store in the computing context, and this I guess maybe would solve or be a way that would capture more of what we're thinking about when the flash up on the screen seems to imply to me like computer storage, like save, store, save, or record. And if you've recorded something, you've held on to it a little bit longer. You've hit save as in your Word document. Well, and I think one of the reasons, getting back to your honors question about whether store was really surplusage, I think one of the reasons store may be there is this requires automatic. And I think Congress may well have been concerned that someone who generated numbers randomly or sequentially and then stored them, and then there was a bit of a process or maybe human intervention before they were dialed would argue that that wasn't automatic. And those arguments have been made. What's the extent of human intervention that's required? And so I think one of the things Congress was doing here was making clear that that dodge wasn't going to work if there was some break between the creation of the numbers, putting them into a storage, and then later dialing them, they were still going to be covered. To me, that's why store has meaning. So are you saying then that it isn't just the nanosecond the telephone number is produced using the random generator, and the nanosecond between that moment and the moment when it's dialed, you're willing to say that's not storage? No, I'm not willing to say that's not storage. Because I thought that was what Judge Barrett's question was getting at, because if that's storage, it really is nanoseconds. I think there certainly is no basis for limiting storage in any way, and that's why I think if storage has the meaning my friend has, the whole rest of that clause is rendered totally surplus. So why wouldn't that argue for a more common sense meaning of the word store? I mean, we can always come up with extreme meanings of things, but, again, we're urged not to do that. Well, I don't think you have to come up with a common sense meaning, because I think Congress in the very clause indicated what it was focused on, which was random or sequential number generation. So only certain numbers are stored? Is that what you're saying? Store using a random or sequential number generator? Does that mean that only some numbers are stored? As Judge Feinerman said, I think that refers to the character of the numbers that are stored that are covered by the statute. It doesn't say other numbers. But that's not what using means. I don't know why using refers to it. I love Judge Feinerman, but I don't know that using has anything to do. Store using a random or sequential number generator. I think, and this builds on Judge Wood's question here, is there, and I guess this goes back to the picky grammar, I've had a hard time figuring out if there's any grammatical construction under which that phrase using is correct. I mean, because if it was an adverbial phrase, then it should have had a subordinating conjunction like by using. It's not really a participial phrase. And that kind of bears on how do you figure out what it's supposed to be in modifying. I'm wondering if there's a Scrivener's error of some sort there. I don't know if it's a Scrivener's error. I think we do think that it's an adverbial phrase that can modify to be called an adjectival infinitive, again, to get into the grammar term. We also think it could modify both verbs, although that discussion, and I think maybe using is slightly awkward, but I don't think it's anywhere near as awkward as the alternative, which is to read that whole phrase out of the statute entirely. Can I just – If you read it as modifying to be called, I don't think that gets rid of Part B. I think it's the selection process of what's going to be called, and then B is the actual calling, the word dial being another dinosaur. I think A identifies the sort of universe of numbers that are covered when they are called. I agree with you. But why doesn't that universe include something as non-exclusive as the list of AT&T's customers? I mean, you know, a preset list or a list randomly generated. Well, because if it includes a preset list, it includes all numbers, anything that's stored, as I said, because every list is stored, and so once there's a list, however it's derived, then it's covered. I take that point. If we agreed with you that producing and then immediately dialing does include storage, then you're right. If we don't agree with it, if we think that's a strained meaning of store, then they're all doing something different. You're storing and dialing or you're producing and dialing, and either one of them, that's why the word or is used, either one of them satisfies the statute. Well, you're still creating two totally different universes, and it would be odd. Why did Congress limit the way the list is produced? If any list that's stored is covered, why would it have drastically limited the produced quotient? Because produced is much more likely to sweep in people who don't have any preexisting relationship with AT&T, as indeed it seems to have done with Mr. Godelock, who gets all these Spanish texts. Well, I think it turns out there was a typo in the AT&T records. I don't think there's any dispute that the number that was dialed came from the records. But let me make another point about that interpretation, which Judge Barrett raised earlier, which is what does it cover? Group texts, current capacity, current of my iPhone, to send group texts would be covered under that definition. Why? Because numbers are stored and they're dialed automatically. When I press a group text and press the button, the up button, it's automatically sent to 10 or 100 people, or 1,000 people, depending on how many numbers are in that group text. But it's not a random or sequential. That whole discussion of iPhones was in the capacity versus non-capacity, and certainly when you send a group text, you are individually selecting the people that you want to be, maybe it's your grandchildren or something. Well, it's a preset list, exactly what happened here. AT&T individually selected a list of numbers. And because it is a list that is stored, that list of whomever it is, my friends or my college buddies, is pre-stored in my iPhone right now. This is not a capacity question. And when I text them and press send to those 50 people, under the plaintiff's definition, that is a violation. And I think it's important to note that's not just a violation. That makes my iPhone an auto-dialer, which means that any texts that I send to anyone, even if it's an individual text, become actionable. But it requires human intervention, so you have to assume, the iPhone requires human intervention, so you have to assume that human intervention is still covered, which is over, right? Your Honor, everything requires, the process that AT&T uses here requires human intervention. Somebody has to press a button once the list is, creating the list requires human intervention, and someone has to press a button that says, yes, send to that list. So they're doing exactly the same thing. Is that right? I'm not sure that is the way it works. I mean, somebody, of course, somewhere one hopes that there's a human being. It's not the world of how. I think the record shows, Your Honor, that the way the system works is that the customer numbers are put into a list, and they're uploaded separately, and then the system sends the text once they're uploaded. But you can automate most of that. Well, you could, but the case is certainly. Once the number is in a certain field in your records, you can just do a scrape for that field. The cases certainly indicate that human intervention is required at some point, as even the Ninth Circuit said in Marx. So I think the problem here is opening the door to this interpretation creates that very fundamental problem. Mr. Pincus, your proposal that using that phrase, using modifies to be called, runs against the argument that the numbers have to be created using the number generator, right? Because then it's modifying how the numbers are called in a way, like in my database, generating whether I'm going to call 1, 10, 11, in the list first, rather than how the string, that's the phone number, is created, right? I don't think so. I think to be called is still part of the phrase telephone numbers, and so I think it's modifying that part of that phrase, but the to be called is still attached to using telephone numbers. So it's really modifying numbers to be called, not to be called. Numbers to be called, I'm sorry. I'd like to just mention, if I may, a couple of other points. My friend mentioned the question of the other statutory, of the defenses. The consent and government data. The consent and government data. Two points on that. Those defenses also apply to prerecorded calls, which are also prohibited by the same provision, so nothing renders them meaningless. And also, the current, as we were just discussing, once a device is an autodialer, even non-autodialed calls are covered. So those exemptions still have work to do. If, for example, someone has an autodialer, but also uses it for regular calls or non-autodialed calls, then those exemptions would still be protective. So I think there's really no argument there. And I think it's interesting, if you look at the provision, the whole provision, the prohibition we're talking about is in 227B1A3. B1A1 and 2 speak about emergency lines and calls to hospital and health rooms. And I think that provides some additional support for the idea that what was focused on here was that category of call. And also, it further undermines the argument that those defenses are superfluous because plaintiff's argument would apply to those things as well. So everybody agrees here, I take it, that the fact that these aren't really calls, that they're text messages, is of no importance? I think everyone agrees that texts are covered, yes. Okay. I mean, there's a different level of intrusion in getting an annoying text than there is in getting an annoying phone call. And some courts, the 11th Circuit recently said, just one text is not enough to confer standing, but we're not raising that argument here. Okay. So here you are, Mr. Pincus, arguing for the right to be annoyed. I think what I'm arguing for is the right not to have this statute apply broadly. I mean, it is a statute. No, so you're arguing for the right of companies to intrude themselves in unwanted ways into people's lives. I think it's important to recognize, though, that this prohibition is one element of the TCPA. There's a do not call list that applies as well. There are other protections that apply as well. And I think the other thing that's important to recognize is Congress didn't apply this prohibition to landlines, which were the principle. I recognize that maybe for the reason that you said, but it also undermines the argument that somehow Congress wanted to stop all It was concerned about the First Amendment implications of that, among other things, I believe. Well, I think there are concerns about the First Amendment implications of plaintiff's argument, because if, and I believe it's true, it covers group texts and makes my iPhone an auto dialer, then every text that I send from my iPhone is punished by $500. And I think that would be a very significant First Amendment problem with interpreting the statute that way, in addition to the sort of, one problem, one question is how it applies in the light of today's technology, but another question is whether that application creates a very significant First Amendment problem in terms of the restriction on speech that it would create. Okay. Unless the court has any further questions. I think we're about wrapped up then. Thank you. Thank you so much. Anything further, Mr. Sostren? Yes, just a few things, Your Honor. Thank you. To address the group texting, it's not automatic dialing without human intervention. And it pales in comparison to the system at issue here. This system generated the list of phone numbers automatically through numerous computer processes. And then when it goes to the dialing, it does all kinds of automated functions to throttle the timing of those text messages to deal with the carrier's network appropriately to remove improper numbers. There's no comparison to the automation function to this system. Another issue with respect to can you have using a random or sequential number generator modify the phrase telephone numbers to be called. That does not make grammatical sense. Telephone numbers cannot use a random or sequential number generator. So if anything, the other option is does it modify the verb called. And as we discussed, that's problematic because then it renders that second section of dialing redundant. One other issue I'd like to address is that going back to the government debt collection exception to liability. This was enacted in 2015 when there was already a consistent judicial construction of what ATDS meant. Well, this is before all these FCC orders, but your opponents say, but the D.C. Circuit case was pending. It was well understood by those who follow this area that it was an area that was under challenge. So how do we know what Congress ratified? Because you don't look at the fact that a case has been challenged. You look at what the cases have already held. And they had already held that list-based systems were covered as ATDSs based on the FCC's orders. And, you know, we cite it to the Supreme Court's case and then to Texas Department of Housing. It's the exact same situation. You have a construction. So I think your better argument from that is frankly that if list-based systems had been covered for all those years and the world didn't actually grind to a halt, you know, maybe it won't now if you were to prevail. I think that's true, Your Honor. If there's no further questions, I'll end there. Thank you very much. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement.